**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MIKE HISEROTE,                                )
                                              )
                          Plaintiff,          )
                                              )
v.                                            )          Case No.  05-4117-KGS
                                              )
MIDWAY CO-OP                                  )
ASSOCIATION, INC.,                            )
                                              )
                          Defendant.          )

**MEMORANDUM AND ORDER**

This matter comes before the court upon plaintiff's Motion for Summary Judgment (Doc.

24) and accompanying Memorandum in Support (Doc. 25).  Defendant has filed a response

(Doc. 31) to which plaintiff has filed a reply (Doc. 32).  The issues are fully briefed and ripe for

decision.

In the present motion, plaintiff seeks summary judgment as to his claims for (1) Workers'

Compensation Retaliation; (2) Interference under the Family and Medical Leave Act

("FMLA")[1]; (3) Retaliation under the FMLA; and (4) Failure to Restore under the FMLA.  As to

each of these claims, plaintiff has failed to meet his burden of demonstrating an absence of

genuine issues of material fact.  Because these issues can only be resolved by the trier of fact

evaluating the evidence at trial, the court overrules plaintiff's motion for summary judgment.

**I.      Summary Judgment Standard**

Summary judgment is appropriate only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of

_____

[1]29 U.S.C. § 2601 et seq.

law."[2]  For purposes of reviewing a summary judgment motion, a factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[3]  A "genuine" issue of fact exists where "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[5]  Once the moving party satisfies this initial burden in a properly supported motion, the burden shifts to the non-moving party to show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[6]  The non-moving party may not rest on mere allegations or denials in its pleading in opposition to summary judgment, but "must set forth specific facts showing that there is a genuine issue for trial."[7]

The court determines "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of

---

[2] Fed. R. Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson,* 477 U.S. at 248).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  *See also Doebele v. Sprint Corp.*, 157 F.Supp.2d 1191, 1195 (D. Kan. 2001); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991).

[6] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

[7] *Liberty Lobby*, 477 U.S. at 256.

law."[8]  To that end, the court "should not weigh the evidence or credibility of witnesses."[9]  On a motion for summary judgment, the "judge's function is not. . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[10]  The court must consider the record in the light most favorable to the non-moving party.[11]  "If an inference can be deduced from the facts that would allow the nonmovant to prevail, summary judgment is inappropriate."[12]

## II.   Factual Background

The following facts are either uncontroverted or, if controverted, construed in the light most favorable to defendant, the non-moving party.  Immaterial facts and factual averments not properly supported by the record are omitted.

Plaintiff began his employment with defendant on June 25, 2001 and became a full-time employee on or about February 19, 2002. Plaintiff was terminated on October 29, 2003.  At the time of plaintiff's termination, Allen Hansen was Mr. Hiserote's immediate supervisor. Subsequent to plaintiff's termination and prior to the filing of the present action, Mr. Hansen passed away.   At the time of plaintiff's termination, Mr. Hackerott was the office manager and answered questions relating to Human Resources and the employees' handbook.

---

[8]*Id.* at p. 251-52.

[9]*Wells v. Wal-Mart Stores, Inc.*, 219 F. Supp. 2d 1197, 1200 (D. Kan. 2002).

[10] *Liberty Lobby*, 477 U.S. at 249.

[11]  *See Doebele*, 157 F. Supp.2d at 1195.  *See also Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991).

[12]*Wells*, 219 F. Supp. 2d at 1200 (citing *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986)).

On October 23, 2003, plaintiff notified his supervisor the he was ill and needed the day off to see the doctor.  This absence was excused by defendant.  On October 24, 2003, plaintiff did not report to work or call in sick.  However, between 7:30 and 8:00 p.m., plaintiff appeared at the job site and provided defendant with two notes from his doctor, Dr. Drake, requesting that plaintiff be excused from work on October 23 and October 24.  One of these notes stated that plaintiff was "under care at this time for severe contraction headaches and insomnia.  Today [plaintiff] overslept because of medication side effects and was unable to work."[13]  On October 25, 2003, plaintiff worked from 9:30 a.m. to 2:30 p.m.  Plaintiff was not scheduled to work on October 26, 2003.

On October 27, 2003 plaintiff did not report to work and did not call in sick.  However, during the afternoon of October 27, Dr. Drake, called Mr. Hansen, plaintiff's direct supervisor, and reported that plaintiff was sick and could not work that day.  Dr. Drake also informed Mr. Hansen that plaintiff had an appointment to see Dr. Drake on October 29, 2003.  Dr. Drake did not state that plaintiff would be unable to work on either October 28 or 29, 2003.[14]

On October 28 and 29, 2003, plaintiff did not report to work or call in sick.  However, sometime later in the day on October 29, plaintiff appeared at the job site to pick up his paycheck.  At this time, defendant informed plaintiff that he had been terminated for failing to meet defendant's attendance policy.  Specifically, defendant cited plaintiff's absenteeism on October 28, 2007, as the reason for termination.

---

[13]Memorandum in Support of Summary Judgment (Doc. 25) at (Exhibit 2).

[14]Memorandum in Support of Summary Judgment (Doc. 25) at (Exhibit 4) (Mr. Hansen's time line regarding termination of plaintiff).

On October 30, 2003, defendant received a note from Dr. Drake requesting that plaintiff's absence on October 28, 2003 be excused due to illness.  This note also informed that plaintiff could return to work on October 29, 2003.  At this time, plaintiff requested to return to work, but defendant declined to reinstate plaintiff.  Plaintiff never filed a formal claim for Workers' Compensation and  never filed a formal request with defendant for medical leave pursuant to the Family and Medical Leave Act.

In a letter sent to the Unemployment Insurance Call Center of the Kansas Department of Human Resources after plaintiff's termination, Dr. Drake stated that plaintiff  "was treated for severe contraction type headache and exhaustion from October 23rd to October 30th" and that plaintiff "has a history of potentially toxic exposures at work and in his home but there is no evidence (none was sought) that these exposures caused his headache."[15]

That parties agree that (1) plaintiff provided a doctor's certificate for each of his absences from work from October 23, 2003 to October 30, 2003 within three days of each absence; (2) plaintiff was a full-time employee of defendant on October 29, 2003; (3) defendant is an employer within the meaning of the FMLA; and (4) plaintiff was eligible for FMLA benefits as of October 23, 2003.

**III.     Discussion**

**A.     Plaintiff's Claim of Workers' Compensation Retaliation.**

As with employment discrimination claims, cases of retaliatory discharge often rest on circumstantial evidence, not direct evidence, to prove that the employer unlawfully intended to

---

[15]Reply (Doc. 32) at (Exhibit 1 at p. 3).

discharge an employee.[16]  As a result,  "Kansas appellate courts have adopted the burden shifting

analysis . . . [f]or use in workers' compensation discharges cases."[17]  In order to establish a prima

facie case of retaliatory discharge under Kansas law, a plaintiff must prove the following:

> (1) [he] filed a claim for workers' compensation benefits or sustained an injury for
> which [he] might assert a future claim for benefits; (2) defendant had knowledge
> of [his] workers' compensation claim or of [his] sustaining a work-related injury
> for which [he] might file a future claim for benefits; (3) defendant terminated
> [his] employment; and (4) a causal connection exists between [his] termination
> and [his] protected activity or injury.[18]

After making such a showing, the burden shifts to the defendant employer to articulate a

legitimate, nonretaliatory reason for terminating plaintiff's employment.[19]  Should defendant

employer articulate such a reason, the burden then shifts back to plaintiff to prove that

defendant's reason is a pretext.

There is no dispute as to whether defendant terminated plaintiff's employment.

However, the court finds that genuine issues of material fact exist concerning whether: (1) there

was a causal connection between plaintiff's exercise of rights under the Kansas Workers'

Compensation Act and the termination of his employment; (2) defendant knew or should have

known at the time of plaintiff's termination that plaintiff suffered from a work-related illness;

and (3) defendant's legitimate non-discriminatory reason for terminating plaintiff was a pretext.

---

[16] *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002).

[17] *Gonzalez-Centeno v. N. Cent. Kansas Reg'l Juvenile Det.* Facility, 278 Kan. 427, 101 P.3d 1170 (Kan. 2004)(citing *Rebarcheck v. Farmers Co-op. Elevator & Mercantile Ass'n*, 272 Kan. 546, 35 P.3d 892(2001)).

[18] *Bones v. Honeywell International, Inc*., 366 F.3d 896, 875 (10th Cir. 2004) (citing *Foster v. Alliedsignal, Inc*., 293 F.3d 1187, 1193 (10th Cir. 2002)); *Sanjuan v. IBP, Inc*., 160 F.3d 1291, 1298 (10th Cir. 1998).

[19]*Murray v. City of Sapulpa*, 45 F.3d 1417, 1421 (10th Cir. 1995).

1.    **Plaintiff sustained an injury for which he might assert a future claim for benefits.**

Defendant contends that whether plaintiff sustained an injury for which plaintiff might assert a future claim for benefits is a material question of fact. The court disagrees. "In meeting this *initial* burden, the plaintiff must show in part that [plaintiff] sustained an injury for which [plaintiff] could or *might* assert a future claim for benefits."[20] Plaintiff does not have to prove that his injury would necessarily have been permissible under the Kansas Workers' Compensation Act, but rather must establish that he "has a reasonable good-faith belief that his activity is protected."[21]

Plaintiff's sworn affidavit[22] states that Dr. Drake informed plaintiff that the chemicals at plaintiff's work might have caused his headaches.[23] Moreover, plaintiff contends that he asked his supervisor Mr. Hansen to be allowed to file a Workers' Compensation Claim because of his

---

[20]*See Dobele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1140 (10th Cir. 2003)(emphasis added)(*comparing Sanjan v. IBP, Inc.*, 275 F.3d 1290, 1298 (10th Cir. 2002) as articulating the standard as sustaining injury for which one might assert future claims or benefits *with Robinson v. Wilson Concrete Co.*, 913 F. Supp. 1476, 1483 (D. Kan. 1996) and *Bracken v. Dixon Indus. Inc.*, 272 Kan. 1272, 38 P.3d 679, 682 (D. Kan. 2002) as articulating the standard as sustaining injury for which one could assert future claim of benefits).

[21]*Wilkins v. Kmart Corp.*, No. 05-4074-SAC, 2006 U.S. Dist. LEXIS 83719 at *28-29 (D. Kan. November 16, 2006)(citations omitted).

[22]No part of plaintiff's deposition is attached to the present motion. Plaintiff simply attaches a sworn affidavit which swears that statements outlined in his summary judgment motion are true. *See* Memorandum in Support of Summary Judgment (Doc. 25) as (Affidavit of Plaintiff). However, as defendant correctly points out, several of those statements constitute inadmissable hearsay which should be disregarded in evaluating a motion for summary judgment under Rule 56. *See Argo v. Blue Cross Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

[23]*See* Memorandum in Support of Summary Judgment (Doc. 25) at p. 5.

headaches.[24]  Thus, it seems that plaintiff, if believed, had a good-faith belief that he might assert a future claim for benefits.  Consequently, for the purposes of plaintiff's summary judgment motion the court will assume the first element of plaintiff's prima facie case has been met.

   **2.    Whether a causal connection exists between plaintiff's termination and plaintiff's protected activity is a genuine issue of material fact.**

   Defendant argues, and the court agrees, that plaintiff has failed to prove an absence of any  genuine issue of material fact as to the causal connection element of plaintiff's prima facie case.

   **a.    Temporal Proximity.**

   "To establish the requisite causal connection, a plaintiff must prove an unlawful intent on the part of the employer to terminate [him] *because* [he] had filed a workers' compensation claim or had sustained a work-related injury for which [he] might file such a claim."[25]  Temporal proximity is often used to prove causation.[26]  More expressly, "[a] causal connection may be demonstrated by evidence such as protected conduct closely followed by adverse action."[27]  However, "[p]roximity in time between the claim and the discharge is a typical beginning point for proof of causal connection."[28]

---

   [24]*Id.*

   [25]*Bone*, 366 F.3d at 876 (citing *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1116 (10th Cir.2001))(emphasis in original).

   [26] *See Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004).

   [27]*Hysten v. Burlington Northern Santa Fe Ry. Co.*, 372 F. Supp. 2d 1246, 1254 (D. Kan. 2005).

   [28]*Rebarchek v. Farmers Coop. Elevator & Mercantile Ass'n*, 272 Kan. 546, 555, 35 P.3d 892, 899 (2001)(citing *Marinhagen v. Boster, Inc.*, 17 Kan. App. 2d 532, 540, 840 P.3d 534 (1992).

Here, temporal proximity weighs in plaintiff's favor.  Plaintiff was terminated on October 29, 2003 for his absence on October 28, 2003.  However, as defendant points out, temporal proximity may allow plaintiff to *survive* a summary judgment.[29]  Plaintiff has not cited, and the court has not found, case law demonstrating that temporal proximity alone established at the summary judgment stage warrants as a matter of law summary judgment in plaintiff's favor.

**b.    Defendant's knowledge of plaintiff's work-related injury.**

Moreover, even if temporal proximity is established, the causal connection requires an element of  knowledge on defendant's part that plaintiff's injury was work-related.

**i.    Standard.**

Plaintiff must show that, "at the time of [plaintiff's] discharge, the decision-makers who terminated [his] employment were aware or should have been aware that the absences for which [plaintiff] was discharged were the result of a work-related injury."[30]  "Retaliatory discharge is an intentional tort: it is committed only when the employer discharges the employee for an improper reason."[31]  Consequently, "[t]he mere act of firing an injured employee for excessive absences or for violations of an absenteeism policy does not implicate an improper retaliatory motive, particularly when the decision-makers were not aware that the absences were due to

---

[29]*See* Response (Doc. 31) at p. 9 (citing *White v. Tomasic*, 69 P.3d 208 (Kan. Ct. App. 2003) and *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10thCir. 1999)).  Both *White* and *Anderson* hold that temporal proximity may be persuasive evidence of retaliation sufficient to establish causation.

[30] *Bones*, 366 F.3d at 876 (citing *Foster*, 293 F.3d at 1193).

[31]*Wilkins*, 2006 U.S. Dist. LEXIS 83719 at *11 (D. Kan. November 16, 2006)(citing *San Juan v. IBP*, 90 F. Supp. 2d 1208, 1211 (D. Kan. 2000)).

work-related injuries."[32]  An employer is charged "with knowledge of those facts concerning an employee's workplace injury reasonably available to the employer at the time."[33]

> ii.     Whether at the time of discharge defendant knew of or should have known that plaintiff's absences were work-related is a genuine issue of material fact.

Plaintiff alleges that defendant knew or should have known that his injury was work-related for several reasons.  Generally, plaintiff alleges that during the weeks leading up to October 23, 2003, he developed severe headaches.  First, plaintiff contends he reported his headaches to his supervisor Mr. Hansen and informed Mr. Hansen that he developed these headaches whenever he worked with chemicals.  Second, plaintiff states that he asked Mr. Hansen for equipment to protect himself from chemical exposure, but that Mr. Hansen refused. Further, plaintiff contends he asked to be allowed to file a workers' compensation claim but that Mr. Hansen directed plaintiff to the main office.  Plaintiff also contends that he previously asked Mr. Hansen about filing a workers' compensation claim for a separate work-related condition and Mr. Hansen discouraged him from doing so.  Finally, plaintiff alleges that prior to plaintiff's termination, Dr. Drake informed Mr. Hansen that plaintiff's injury was likely work-related.  This last allegation, as presented, appears to consist of inadmissable hearsay.[34]

Plaintiff contends that because of these assertions, it is undisputed defendant knew plaintiff's medial condition was work-related.[35]  However, the only actual evidence in the record

---

[32] *Bones*, 366 F.3d at 876.

[33] *Bausman.*, 252 F.3d at 1121-22.

[34] *See supra* note 22.

[35] *See* Memorandum in Support of Summary Judgment (Doc. 25) at p. 15.

which supports this contention that defendant knew plaintiff's condition was work-related is plaintiff's own testimony.[36]  These issues are further complicated by the fact that subsequent to plaintiff's termination and prior to the initiation of the present case, Mr. Hansen died. Consequently, the court does not have Mr. Hansen's deposition testimony with which to determine Mr. Hansen's knowledge of plaintiff's illness.  However, in Mr. Hansen's documented summary of the events leading up to plaintiff's termination, Mr. Hansen does not indicate that he had any knowledge that plaintiff's headaches were work-related.[37]

A jury might view plaintiff's assertions as clear and convincing proof of the causal connection between plaintiff's illness and his termination and/or that defendant had knowledge that plaintiff's illness was work-related.  However, for the court to make such a determination at the summary judgment stage would be premature because the finder of fact, and not the court, should weigh the credibility of plaintiff's testimony.[38]

Moreover, viewed in a light most favorable to defendant, defendant's own evidence indicates that a factfinder and not the court should weigh witness credibility.  Indeed, Mr. Hackerott, has contradicted plaintiff's version of events.  As to plaintiff's contention that he requested the Material Safety Data Sheet (MSDS) for the products plaintiff worked with from his supervisors, Mr. Hackerott testified he had no recollection of plaintiff making such a request. Specifically, Mr. Hackerott testified the only when plaintiff's attorney initiated the present suit

---

[36]*See* Response (Doc. 31) at p. 8.

[37]*Id.* at (Exhibit 4).

[38]*See Ramirez v. IBP, Inc*., 913 F. Supp. 1421, 1425 (D. Kan. 1995) ("[a] summary judgment motion does not empower the court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences.").

did Mr. Hackerott learn of plaintiff's allegation that he had requested an MSDS.[39]   Regarding

whether Mr. Hackerott knew plaintiff's injury was work-related, Mr. Hackerott testified as

follows:

> Q:   Did he [plaintiff] tell you that Dr. Drake had a question about whether the headaches would have been caused by exposure at work?
> A:   I don't remember if he said anything about that or not.
> Q:   Do you deny that he talked to you about the possibility of his medical condition being caused by something at work?
> A:   He might have said something.
> Q:   What do you recall that might have been [said] along those lines?
> A:   I don't know.  You know – I don't know if he – I don't know if he said – I don't know if he would – he might have said something.  I don't recall the exact words or anything like that.[40]

As to whether plaintiff informed Mr. Hackerott that plaintiff intended to file a workers'

compensation claim, Mr. Hackerott testified as follows:

> Q:   When Mr. Hiserote was meeting with you and raised the issue of working with chemicals, did you tell him that he could file a Work Comp claim?
> A:   I don't know if I did or not.  I know I wouldn't have told him that he could not.  I don't know if I told him that he could or could not.
> Q:   Did you have a discussion about Workers' Compensation coverage?
> A:   With Mr. Hiserote?
> Q:   Yes.
> A:   No, I don't believe we did.
> Q:   Did you express your opinion that this medical condition would not be covered by Work Comp?
> A:   I don't think - - I'm guessing I didn't.  I mean, I'm guessing - - no.
> Q:   Is it possible that you expressed your opinion regarding Work Comp coverage?
> A:   I guess it's possible, yes.
> Q:   But you have no specific recollection one way or the other?
> A:   No, I do not.[41]

While not a strenuous denial of plaintiff's assertion, viewed in a light most favorable to

---

[39]Response (Doc. 31) at (Hackerott deposition at p. 39-40).

[40]*Id.* at (Hackerott deposition at p. 93).

[41]*Id.* at (Hackerott deposition at p. 98-99).

the defendant, Mr. Hackerott's testimony, and his credibility as a witness should be weighed along side plaintiff's testimony by the trier of fact.[42]

Finally, there is no evidence in the record, other than plaintiff's hearsay assertion, that Dr. Drake informed Mr. Hansen or any other decision-maker for defendant, that plaintiff's headaches were work-related.  In fact, none of the communications from Dr. Drake to defendant even suggest a correlation between plaintiff's illness and plaintiff's employment.  In his letter dated October 24, 2003, Dr. Drake states only that "Mike Hiserote is under care at this time for severe contraction headache and insomnia."[43]  Dr. Drake indicates only *after* plaintiff's termination,  in a letter sent to the  Kansas Department of Human Resources, that plaintiff's illness *might* have been work-related.[44]

 Here, the court finds plaintiff has failed to meet his initial burden of demonstrating the absence of a genuine issue of material fact as to whether defendant's decision-makers knew or should have known at the time of plaintiff's discharge that plaintiff's absences were a result of a work-related injury.[45]

### 3.    Whether defendant's legitimate non-discriminatory reason for discharging plaintiff is a pretext is a genuine issue of material fact.

Should plaintiff meet his burden of establishing a prima facie case, the burden then shifts to defendant to demonstrate a "legitimate nondiscriminatory reason" for its action.[46]  Here,

---

[42]*Ramirez v. IBP, Inc.*, 913 F. Supp. 1421, 1425.

[43]*See* Response (Doc. 31) at p. 33.

[44]Reply (Doc. 32)at (Exhibit 1 p. 3).

[45] *Celotex Corp.*, 477 U.S. 317, 323 (1986).  *See also Doebele*, 157 F. Supp.2d at 1195.

[46]*Murray v. City of Sapulpa*, 45 F.3d 1417, 1421 (10th Cir. 1995).

defendant argues that plaintiff failed to meet the company's no call/no show policy.[47] Failing to meet an employer's attendance policy is often considered a legitimate reason to terminate an employee.[48] Thus, the burden shifts to plaintiff to prove with clear and convincing evidence that defendant's legitimate nondiscriminatory reason is a pretext.[49]

The court finds that summary judgment in plaintiff's favor is additionally unwarranted because plaintiff has failed to demonstrate an absence of genuine issues of material fact as to whether defendant's legitimate nondiscriminatory reason for terminating plaintiff is pretextual.[50] Mere conjecture that the employer's explanation is a pretext is an insufficient basis for denial of summary judgment.[51]  Pretext can be shown by

> 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'[52]

The court also notes that:

> the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual.  And, 'a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability,' even absent 'additional, independent evidence of discrimination' or other

---

[47]*See* Response (Doc. 31) at p. 10.

[48]*See e.g. Wells v. Wal-Mart Stores, Inc.*, 219 F. Supp. 2d 1197, 1203 (D. Kan. 2002); *Bausman*, 252 F.3d at 1120.

[49]*Bausman*, 252 F.3d at 1116.

[50]*Id.*

[51] *See Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).

[52] *Bausman*, 252 F.3d at 1120 (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir.1996) (further citation omitted).

unlawful intent.[53]

The court has already held that a genuine issue of material fact exists as to whether defendant's decision-makers knew plaintiff's injury was work-related.  As a determination of that fact may impact whether defendant's reason for plaintiff's termination was pretextual, the finder of fact should decide the issue of pretext as well.[54]

Plaintiff has failed to meet his initial burden of demonstrating the absence of genuine issues of material fact as to his workers' compensation retaliation claim.[55]  Accordingly, the court denies plaintiff's motion for summary judgment as to said claim.

### B.    Plaintiff's FMLA Claims.

As to violations of the FMLA, the Tenth Circuit "has recognized two theories of recovery under [29 U.S.C.] § 2645(a): and entitlement theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2)."[56]

As to plaintiff's claims under the FMLA, the court finds that genuine issues of material fact exist concerning whether: (1) defendant has sufficient notice of plaintiff's need for leave

---

[53]*See* Memorandum in Support of Summary Judgment (Doc. 25) at p. 20 (citing *Bausman*, 252 F.3d at 1122-23 (citations omitted)(emphasis added)).

[54]*Foster v. Alliedsignal Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002) ("A federal court's responsibility to apply the clear and convincing standard of proof at the summary judgment stage is not a license to engage in a mini-trial.").

[55] *Celotex*, 477 U.S. at 323.  *See also Doebele*, 157 F. Supp.2d at 1195.

[56]*See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). Despite the Tenth Circuit's holding, plaintiff asserts that a "failure to restore" claim under the FMLA is separate and distinct from his interference claim.  Plaintiff cites 29 U.S.C. § 2615(a)(1), the section governing FMLA interference, in support of this proposition.  In light of the Tenth Circuit's stance that two causes of action exist under the FMLA, the court will construe plaintiff's separate failure to restore claim as an alternate theory of recovery for plaintiff's claim of FMLA interference under § 2615(a)(1).

pursuant to the FMLA; (2) plaintiff was entitled to leave from work pursuant to FMLA for any period of time between October 23, 2003 to October 29, 2003; (3) there was a causal connection between plaintiff's exercise of FMLA rights and the termination of his employment; and (4) defendant had a good faith, non-retaliatory motive for terminating plaintiff's employment.

### 1. Preliminary Issue: Notice.

Defendant  argues that plaintiff never gave proper notice of his intent to take FMLA leave.  In the Tenth Circuit,  "[t]he analysis of improper notice under the FMLA is separate from the analysis of the *substantive* claim that an employer interfered with the exercise of an employee's FMLA rights."[57]  As a general matter, "[t]o trigger an employer's obligations under the FMLA, an employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed" for a medical reason.[58]  Yet, "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of that leave."[59]  Indeed, "a party must provide a supervisor with some indication that the leave is in connection with FMLA."[60] When the employer has notice that an employee might be eligible for benefits under

---

[57]*Bone*., 366 F.3d at 878 n. 2.

[58]*Mondaine v. Am. Drug Stores, Inc*., 408 F. Supp. 2d 1169, 1202 (D. Kan. 2006)(citing 29 CFR § 825.302(c)) .

[59]29 CFR § 825.302(c).

[60]*McGinnis v. Emplr. Health Servs*., No. 05-2219, 2006 U.S. Dist. LEXIS 35831 at *16 (D. Kan. May 31, 2006)(citing *Bryant v. American Airlines, Inc*., 75 Fed. Appx. 699, No. 02-5106 (10th Cir. 2003)(citing *Bailey v. Amsted Indus., Inc*., 172 F.3d 1041, 1045 (8th Cir. 1999)).

the FMLA, the employer has a duty to inform the employee that the FMLA might apply.[61]

It is undisputed that plaintiff never officially sought FMLA leave. While it is not necessary for plaintiff to have asked for FMLA leave by name, the record does not demonstrate plaintiff gave any indication of the anticipated timing and duration of that leave. Consequently, whether plaintiff gave at least verbal notice sufficient to make defendant aware of plaintiff's need for FMLA-qualifying leave is genuine issue of material fact.

### 2. Plaintiff's claim of FMLA Interference under 29 U.S.C. § 2615(a)(1).

To prevail on an interference or entitlement theory, plaintiff must demonstrate: (1) that he was entitled to FMLA leave; (2) that some adverse action by the employer interfered with his or her right to take FMLA leave; and (3) that the employer's action was related to the exercise or attempted exercise of his or FMLA rights.[62] "Under the interference theory, if an employer interferes with an employee's FMLA-created right to a medical leave, it has violated the FMLA regardless of its intent."[63]

However, if the employee's termination would have occurred regardless of the request for FMLA leave, the employee may be terminated even if such termination prevents the employee from exercising his right to leave under the FMLA.[64] "[A]n employee who requests

---

[61]*Xiangyuan Zhu v. Fed. Hous. Fin. Bd*., 289 F. Supp. 2d 1253, 1289 (D. Kan. 2005 ) (citing *Tate v. Farmland Indus., Inc*., 268 F.3d 989, 997 (10th Cir. 2001)(citing 29 CFR § 825.208(a)).

[62]*Jones v. Denver Public Schools*, 427 F.3d 1315, 1319 (10th Cir. 2005); 29 U.S.C. § 2615(a)(1). Under 29 U.S.C. § 2617(a), employees are authorized to bring a cause of action for violations of  § 2615(a).

[63]*Bones*, 366 F.3d at 877.

[64]*Id*.

17

FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request."[65]

> ### a. Whether plaintiff was entitled to FMLA leave is a genuine issue of material fact.

The FMLA entitles a qualified employee up to twelve weeks of leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[66]  Defendant contends that plaintiff's headaches and illness were not a "serious health condition" covered by the FMLA.[67]

The statute defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves–(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a heathcare provider."[68] Generally, "unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc., are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave."[69]  U.S. Department of Labor regulation 29 CFR § 825.114 defines "continuing treatment by a healthcare provider" as including:

---

[65]*Smith v. Diffee Ford-Lincoln-Mercury, Inc*., 298 F.3d 955, 960 (10th Cir. 2002)(citation omitted).

[66]29 U.S.C. § 2612(a)(1)(D).

[67]Response (Doc. 31) at p. 13.

[68]29 U.S.C. § 2611(11).

[69]29 C.F.R. 825.11(c).

[a] period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (A) Treatment two or more times by a healthcare provider . . .  or (B)Treatment by a health care provider on at least one occasion which results in a regimen of continued treatment under the supervision of the healthcare provider.[70]

Under these regulations, "treatment" includes "examinations to determine if a serious health condition exists and evaluations of the condition."[71]  The Tenth Circuit has held that "treatment two or more times" described in this regulation "must take place during the 'period of incapacity'" required by 29 CFR § 825.114.

The court finds that plaintiff has not met his initial burden of demonstrating the absence of a genuine issue of material fact as to whether plaintiff's illness constituted a serious medical condition.

First, the court is unclear as to whether plaintiff's headaches were the sort that could be considered a serious medical condition.  Dr. Drake's October 24th letter to defendant states that plaintiff is under his care for "severe contraction headache and insomnia."[72] Moreover, Dr. Drake's October 30, 2003 letter states in part that:

[Plaintiff] was noted to be exhausted and really needed to rest.  He was encouraged on Saturday to stay home and rest until this headache resolved because there was no way to just stop this headache with medication.[73]

The court finds that whether plaintiff's headaches and resulting illness were "headaches other

---

[70]29 CFR § 825.114.  *See also Jones*, 427 F.3d at 1319.

[71]*Jones*, 427 F.3d at 1319 (citing 29 C.F.R. 825.114(a)(2)(i)(A)).

[72]Memorandum in Support of Summary Judgment (Doc. 25) at (Exhibit 2).

[73]Memorandum in Support of Summary Judgment (Doc. 25) at (Attachment 1 p. 7) (emphasis added).

than migraine" and thus a "condition[] that do[es] not meet the definition of a serious health condition"[74] is an issue of fact for the jury.

Second, plaintiff has not proved an absence of a genuine issue of material fact as to whether plaintiff suffered a "period of incapacity" for more than three days as a result of his condition.  Plaintiff did not work on October 23 or 24 but returned to work on October 25, 2003.  Plaintiff appears to not have been scheduled to work on October 26.  Plaintiff has offered no evidence that he was incapacitated related to his condition on October 25 or 26. Dr. Drake's letter to defendant indicates that plaintiff went to the emergency room on October 25, but the record also indicates that plaintiff worked on October 25.

As to plaintiff's other absences, plaintiff missed work on October 27 and 28.  Defendant contends that plaintiff was terminated on October 29 for failing to call in on October 28.  However, defendant's unemployment insurance claim states that plaintiff was terminated for his absence at work on October 28 and 29.[75]

It appears plaintiff sought treatment two or more times by a health care provider the week of his absence.[76]  In his October 30, 2006 letter to defendant, Dr. Drake states that plaintiff was in his office on October 23, in the emergency room on October 25, and in Dr. Drake's office on October 29.[77]  However, whether these absences occurred during plaintiff's 'period of incapacity,' as required by the Tenth Circuit, is unclear and would hinge on the factfinder's

---

[74]29 C.F.R. 825.11(c).

[75]Memorandum in Support of Summary Judgment (Doc. 25) at (Exhibit 5).

[76]Response (Doc. 31) at (Hackerott Exhibit 5).

[77]*Id.*

20

determination of plaintiff's "period of incapacity."  Here, a genuine issue of material fact exists.

>    **b.**    **Whether plaintiff's termination was related to plaintiff's attempt to exercise his FMLA rights is a genuine issue of material fact.**

If the employee's termination would have occurred irrespective of the request for FMLA leave, the employee may be terminated even if such termination prevents the employee from exercising his right to leave under the FMLA.[78]  In *Bones v. Honeywell International, Inc*, the parties never disputed that on the days of absence for which plaintiff was terminated plaintiff had failed to comply with her employer's absence policy.[79]  Thus, the court concluded that plaintiff's request for FMLA leave did not shield her from the obligation to follow defendant's absence policy and plaintiff would have been terminated for this failure irrespective of her request for FMLA leave.[80]

Here, the court believes that whether plaintiff's termination was related to plaintiff's attempt to exercise his FMLA rights is a genuine issue of material fact.  A reasonable jury could believe defendant's argument that it terminated plaintiff for failing to meet its absence policy regardless of  plaintiff's potential right to exercise his FMLA rights.

>    **3.**    **Plaintiff's claim of FMLA Retaliation under 29 U.S.C. § 2615(a)(2)**.

Under the FMLA, claims of retaliation pursuant to 29 U.S.C. § 2615(a)(2) are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green.*[81]  This analysis requires

---

[78]*Bones*, 366 F.3d at 877.

[79]*Id.* at 878.

[80]*Id.*

[81]411 U.S. 792, 802-04 (1973). *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).

plaintiff to bear the initial burden of establishing a prima facie case of retaliation.[82]  To state a prima facie case for FMLA Retaliation, plaintiff must show that (1) he or she engaged in a protected activity; (2) defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.[83]  If plaintiff establishes his prima facie case, the burden then shifts to defendant to demonstrate a legitimate nonretaliatory reason for its decision to discharge plaintiff.[84]  If demonstrated, the burden then shifts back to plaintiff to establish that defendant's nonretaliatory reason for terminating plaintiff's employment is pretextual.[85]

As previously discussed, the court has found that whether plaintiff was entitled to FMLA leave and thus was engaging in a protective activity and whether a causal connection exists between plaintiff's termination and plaintiff's potential qualification for FMLA leave are genuine issues of material fact.  Moreover, as discussed in the context of plaintiff's claim of workers' compensation retaliation, whether defendant's reason for discharging plaintiff is merely a pretext is also a question for the jury.  Consequently, plaintiff is not entitled to a grant of summary judgment on his FMLA Retaliation claim.

Accordingly,

IT IS THEREFORE ORDERED that plaintiff's Motion for Summary Judgment (Doc. 24) is denied.

---

[82]*Metzler*, 646 F.3d at 1171.

[83] *Id.*

[84]*Id.*

[85]*Id.*

IT IS SO ORDERED.

Dated this 1st day of June, 2007, at Topeka, Kansas.


        K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge